## Case No. 10,141.

The NEWARK.

[1 Blatchf. 203.] [1]

Circuit Court, S. D. New York. Oct. Term, 1846. [2]

SHIPPING—DAMAGE TO CARGO—PERIL OF THE SEA —BAD STOWAGE—LARD AND TOBACCO.

1. The ship N. sailed from New-Orleans for New-York, on the 20th of June, with a cargo of

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [Reversing Case No. 4,602.]

tobacco in hogsheads and lard in barrels; when seventeen days out, without having met any very rough weather, lard was pumped from her; the tobacco was damaged by the lard running into it. *Held*, that the damage was occasioned by some cause other than the perils of the sea, such as bad stowage or cooperage, and that the ship was responsible for it.

2. If, under such circumstances, a peril of the sea, subsequent to the first pumping of the lard, and wholly unconnected with the fault of the carrier in the defective stowage or cooperage of the lard, is set up as the cause of the damage, the evidence should be clear and undoubted in order to exonerate the carrier from liability.

3. In this case, the court being satisfied that the barrels of lard were badly stowed and coopered, charged the damage to the carrier.

[Appeal from the district court of the United States for the Southern district of New York.]

Faber & Bierwith filed a libel in rem, in the district court, against the ship Newark, to recover damages for injury caused to tobacco in hogsheads, shipped by them in that vessel from New-Orleans to New-York. The damage was caused by the leakage of grease or lard which ran into the tobacco in the hold of the ship. The bill of lading excepted "the dangers of the seas." The district court pronounced against the libellants, on the ground that the barrels of lard were properly coopered and stowed when put on board, and that the injury to the tobacco was not occasioned by the leaking of the lard directly upon the tobacco, but by stress of weather which caused the ship to leak. The libellants appealed to this court.

Francis B. Cutting, for libellants.

Erastus C. Benedict, for claimants.

NELSON, Circuit Justice. I cannot agree, upon the evidence, that the loss in this case was occasioned by the perils of the sea. The ship left New-Orleans for New-York on the 20th of June, loaded chiefly with lard and tobacco, having nearly seven hundred barrels of the former; and on the 7th of July, when she was seventeen days out, without having encountered any remarkably rough weather, indeed none, except occasionally a heavy swell of the sea, lard was pumped from her, showing, at this time, a very considerable leakage of that article from the casks. The tobacco was damaged by the leakage of the lard. It is quite obvious that, previous to this time, the leakage must have been such as to occasion a good deal of damage; and further, that such was the condition of the cargo, from some cause or causes other than the perils of the sea, either from bad stowage or cooperage, or both, that there was a leakage of the lard which would or might have occasioned all the loss complained of. This fact, I think, is undeniable, and is controlling in the case. For it is vain to urge the subsequent rough weather as affording evidence that the loss was occasioned by the perils of the sea, when it distinctly appears that the operating cause was developed previous to the alleged peril, in a manner sufficient to account for all that happened to the cargo, without attributing any part of the damage to the rough weather which the ship afterwards encountered.

It may be that if a subsequent peril of the sea had clearly occasioned a loss of the tobacco, wholly unconnected with the defective stowage or cooperage of the barrels of lard, the loss should not be borne by the carrier. But the facts present no such case. The loss by the subsequent peril of the sea unconnected with the fault of the carrier must be clear and undoubted, in order to exonerate him from liability.

It is not to be denied, that the shipping of lard with tobacco from New-Orleans in the warm season, exposes the latter to great danger from the leakage of the former, and requires the utmost care in the stowage, and attention to the cooperage of the casks of lard. Some of the witnesses say that lard is a dangerous cargo to ship with other goods like tobacco, and that, without the greatest caution, damage will ensue. Now, I am not satisfied, from the evidence, that sufficient attention was given to the stowage or cooperage of the cargo under the circumstances. Most of the damage occurred to the tobacco in the lowest part of the hold; the hogsheads in the forward and after parts of the ship escaped; and several of the witnesses express doubts and hesitation on the subject of the stowage. The barrels of lard, also, were leaking badly, and had leaked very much, when delivered on the dock for shipping, and before they were put on board. Such is the evidence of the mate, and I understand his logbook to state, under date of the 7th of June, that from a great number of them, onefourth to one-half of their contents had leaked out when they were at the dock. It is true, he says, they were all well coopered before they were put on board. But the result, I think, is evidence that this could have been done but imperfectly; else, why such extensive leakage before the 7th of July, without any uncommon weather? For, I cannot admit that the swells of the sea, spoken of previously, are to be regarded as anything more than what must be usually expected to be encountered in the course of the voyage. The Reeside [Case No. 11,657], and cases there cited.

I am of opinion, therefore, that the decree of the court below should be reversed, with costs, and that there should be a reference to the clerk to ascertain the damages.

————

NEWARK, The (FABER v.). See Case No. 4,602.

NEWARK INDIA RUBBER MANUF'G CO. (DAY v.). See Case No. 3,685.